UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| | |
|---|---|
| Glenn Coe, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>The Coca-Cola Company,<br><br>　　　　　　　　　Defendant | 1:22-cv-00430<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.　　The Coca-Cola Company ("Defendant") manufactures, markets, labels and sells beverages which contain alphanumeric codes printed inside bottle caps that allow participation in its rewards program it manages to redeem these codes.

 

**I.    REWARD PROGRAMS**

2.    Companies utilize reward or loyalty programs to encourage customers to purchase their products or services through brand loyalty and lock-in effects.

3.    These programs are similar to discount programs, because the customer becomes eligible to receive the discount after a certain number of purchases are made.

4.    At least three-quarters of consumers consider a rewards program a significant factor in deciding on how to spend their money.

5.    Consumers understand a reward similar to its dictionary definition, as "something that is given in return for good or evil done or received or that is offered or given for some service or attainment."

**II.   COKE REWARDS PROGRAM**

6.    The Coke Rewards program began by offering customers the ability to redeem bottle caps and other proofs of purchase for things of value, such as movie tickets or gift cards.

7.    Several years later, the Program was modified to eliminate or reduce the frequency of prizes and replaced with the ability to participate in raffles and contests.

8.    A more recent update to the Rewards program answers common customer questions, such as, "How do I earn rewards?:"

> There are a variety of ways to get rewarded for drinking your favorite beverages from The Coca-Cola Company®. Each available offer on the Rewards page will have its own method of participation. When you find an offer you're interested in, follow the instructions on the banner to get started.

9.    However, the Rewards Program no longer provides any things of value to customers, even though it is still described prominently as a Rewards program.

10. Instead, customers are only able to donate their accumulated rewards to pre-selected charities, such as the American Red Cross.





11. While Americans have one of the highest personal charitable donation rates in the world, this is based on their own generosity and ability to choose the organizations they support.

### III. COKE REWARDS ARE UNLAWFUL "TRADING STAMPS"

12. Defendant continues to sell Coke products with reward codes, even though the only benefit is to donate their accumulated value to one of its selected non-profit groups.

13. The alphanumeric codes imprinted on the caps and cases are a modern form of a "Trading stamp," defined as "any stamp or similar device issued in connection with the retail sale of merchandise or service, as a cash discount or for any other marketing purpose, which entitles the rightful holder, on its due presentation for redemption, to receive merchandise, service or cash."

GBL § 570(1).

14. Trading stamps were an early form of a loyalty or rewards program, and were small paper stamps issued to customers by manufacturers and/or merchants.

15. The State Legislature recognized the economic and societal harms caused by trading stamps, and enacted laws to regulate their use.

16. Violation of these laws is a misdemeanor with a fine of up to $500. GBL § 579(1).

17. In establishing requirements for trading stamps, the State recognized that trading stamps (1) encourage customers to make purchases they otherwise might not make, (2) increase prices because the price of the product was raised by the cost of the stamp, (3) prevent price comparison, (4) are subject to high rates of non-redemption, and (5) are subject to frequent program changes which eliminates or significantly reduces the value accumulated by customers.

18. Similar to trading stamps, the Coke reward codes have minimal cash value of a few mils (thousandths of a dollar) individually.

19. When a customer accumulated a number of them, they could be exchanged with a trading stamp company for discounts or premiums, such as toys, personal items, housewares, furniture and appliances.

20. Defendant's Rewards are marketed contrary to state law, because they do not have "legibly printed upon [their] face a cash value determined by the company in cents or any fraction thereof," which meant Plaintiff and other holders were not able to "redeem the stamps in cash when duly presented to the company for redemption in a number having an aggregate cash value of not less than one dollar." GBL § 571(1)-(2).

21. This requirement was designed to prevent customers, like Plaintiff, from being left without any value in the event of their accumulation of non-redeemable reward codes.

22. Trading stamp programs, such as Defendant's Rewards program, are required to be registered with the Secretary of State, to facilitate review samples of its reward codes prior to offering them to customers. GBL § 572.

23. Upon information and belief, the Secretary of State did not review and approve Defendant's Rewards program.

24. Defendant failed to file the required security or bond with the State, the purpose of which is to ensure that holders of the reward codes, like Plaintiff, could successfully redeem them in the precise situation which occurred – the modification of the program to the detriment of Plaintiff and the general public. GBL § 575(1)-(2).

25. Defendant's gradual suspension and elimination of any tangible rewards from its program was not carried out in accordance with the statutory requirement that it provide at least 90 days' notice to the Secretary of State and its retail partners. GBL § 577.

26. By suspending and restricting the redemption of the trading stamps, Plaintiff and consumers are authorized and intend to submit their claims against any security or bond posted by Defendant for the value of their reward codes. GBL § 576(1).

**IV.    DISSATISFCATION WITH REWARDS PROGRAM**

27. Online forums are replete with customers who have accumulated reward codes whose value was eliminated in violation of their statutory protections, and who continue to accumulate reward codes even though they no longer have any tangible value.

28. The independent customer review website, Site Jabber, contains the testimony of hundreds of Rewards program participants, who expressed the same dissatisfaction experienced by Plaintiff.[1]

---

[1] https://www.sitejabber.com/reviews/mycokerewards.com.

29. One participant stated:

> [I]nstead of redeeming codes to earn reward products, You are expected to spends hours entering your codes as a donation. You'd think Coke would just make the donation themselves instead of making us waste time to donate a few cents.

30. Another participant wrote:

> You get nothing for your input time Waste of time. If I put the time into saving the codes and then entering I should get something, not get chance at getting something.
>
> I just knew when they announced this "new and improved" program that we were going to get $crewed. I have probably 200-300 bottle caps and at least 100 codes from 12 packs that I will probably just end up tossing away.

31. A reviewer identified only as "Kellie S." declared:

> I refuse to waste my time scanning them for a charity which will probably never see a cent. I played a couple of the raffles. Maxed out the codes every day for the entire window the game was open and didn't win a thing…This is worse than having no program.

32. While the participant under the name of "Sarah O." did not object to supporting charitable organizations, the Rewards program was "incredibly disappoint[ing] to her because it:

> [No] longer reward[s] their customers. Rather if you want to enter your codes you are forced to donate your rewards. To me it is a slap in the face as a customer. It seems to validate the "disposable" attitude in the world today.

33. While the monetary value of the reward codes was always low, many participants relied on these small benefits, such as a five dollar gift card to Dunkin' Donuts, to help their families scrape by.

34. Customers like Plaintiff and "DeeDee J." still possess "hundreds of coded caps"

6

which are no longer redeemable, even though this is required by state law.

35. "DeeDee J." acknowledged that Defendant is "not obligated to offer us [customers] anything," but by describing the program as offering "Rewards" misled her, as it did Plaintiff.

## V.  CONCLUSION

36. Defendant makes other representations and omissions with respect to the Rewards Program which are unlawful, false and misleading.

37. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a rewards program, relative to itself and other comparable programs or alternatives.

38. The value of the Products to participate in the Rewards Program that Plaintiff purchased were materially less than the value as represented by Defendant.

39. Defendant sold more of the Products to participate in the Rewards Program and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

40. Had Plaintiff known the truth, he would not have participated in the Program or would have done so on different terms.

41. As a result of the false and misleading representations, the Rewards Program causes consumers to spend more money buying Coke products to obtain rewards, despite the absence of any rewards and/or the absence of any redeemable cash value, over other similar products which are supported by rewards programs that provide tangible rewards and/or cash value.

Jurisdiction and Venue

42. Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

43. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

44. Plaintiff Glenn Coe is a citizen of New York.

45. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia.

46. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

47. The Program has been active for over 10 years, with tens of thousands of participants, who purchased Coke products at thousands of locations in the states covered by the classes Plaintiff seeks to represent.

48. Venue is in the Buffalo Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Erie County, including Plaintiff's purchases, consumption, transactions and/or use of the Rewards Program and awareness and/or experiences of and with the issues described here.

## Parties

49. Plaintiff Glenn Coe is a citizen of Orchard Park, Erie County, New York.

50. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Georgia, Fulton County.

51. Defendant's registered agent in Delaware is The Corporation Trust Company.

52. Defendant is the largest carbonated beverage seller in the world based on its flagship product, Coca-Cola ("Coke").

53. The Coke brand is synonymous with quality with high levels of brand loyalty.

54. This loyalty was shown when "New Coke" was released during the 1980s, and

8

customers reacted negatively to its taste, which resulted in the re-introduction of the original Coke formula.

55. Situations like those have shown the public, including Plaintiff, that Defendant will offer customer-friendly programs, represented truthfully.

56. Plaintiff purchased the Coke Products at locations including grocery stores and, convenience stores, between 2016 through the present, among other times.

57. Plaintiff participated in the Rewards Programs from no later than 2016 through the present.

58. Following Defendant's most recent modification of its Rewards Program, Plaintiff's accumulated reward codes became non-redeemable, because the only option was to apply them in support of the non-profit organizations Defendant selected, instead of providing him anything of value.

59. Plaintiff believed and expected a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value

60. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Products and descriptions of the Rewards Program, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

61. Plaintiff bought the Products to participate in the Rewards Program at or exceeding the above-referenced price.

62. Plaintiff would not have purchased the Products to participate in the Rewards Program and would not have done so on the same terms if he knew the representations and omissions were false and misleading or would have paid less for them.

63. Plaintiff chose between Defendant's Products and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components, such as rewards programs which provided tangible rewards and operated in a manner consistent with State law.

64. The Products to participate in the Rewards Program were worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

65. Plaintiff intends to, seeks to, and will purchase the Products to participate in the Rewards Program again when he can do so with the assurance the representations about the Rewards Program are consistent with its abilities, attributes, features and/or composition.

66. Plaintiff is unable to rely on the labeling and representations not only of these Products and their accompanying Rewards Program, but other similar carbonated beverage brands with reward programs, because he is unsure whether those representations are truthful.

Class Allegations

67. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Maine, Wyoming, Idaho, West Virginia, Kansas, Iowa, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

68. Common questions of issues, law, and fact predominate and include whether

Defendant's representations and actions were and are misleading and unlawful and if Plaintiff and class members are entitled to damages.

69. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

70. Plaintiff is an adequate representative because his interests do not conflict with other members.

71. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

72. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

74. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Plaintiff believed a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

77. Defendant's false, misleading, unlawful and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

78. Defendant misrepresented the Rewards Program through statements, omissions,

ambiguities, half-truths and/or actions.

79. Defendant violated GBL §§ 570 *et seq.*, established by the State Legislature to prevent companies from misleading consumers with respect to programs which are based on redeemable items such as the caps containing alphanumeric codes.

80. Plaintiff relied on the representations and omissions to believe a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

81. Plaintiff would not have purchased the Products to participate in the Rewards Program or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

82. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

83. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

84. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

85. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

86. Defendant's conduct showed motive and a reckless disregard of the truth such that

an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

87. The Rewards Program was created, identified, marketed and promoted by Defendant and expressly and impliedly warranted to Plaintiff that a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

88. Defendant directly marketed the Products and accompanying Rewards Program to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

89. Defendant knew the attributes of a rewards program that customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

90. Defendant's representations about the rewards program were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

91. Defendant's representations affirmed and promised that a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

92. Defendant described the Rewards program so Plaintiff believed a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value, which became part of the basis of the bargain that it would conform to its affirmations and promises.

93. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products to participate in the Rewards Program.

94. This duty is based on its outsized role in the market for carbonated beverages, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

95. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

96. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

97. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

98. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

99. The Rewards Program did not conform to its affirmations of fact and promises due to Defendant's actions.

100. The Rewards Program and the rewards it provided were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which they were intended and did not conform to their promises or affirmations of fact made on the packaging, container or label, website, and elsewhere, because it was marketed as if a program described with

the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

101. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value, and he relied on Defendant's skill and judgment to select or furnish such a suitable program, based on qualities and attributes such as providing some tangible bonus beyond purchasing of the Products.

102. Plaintiff would not have purchased the Products to participate in the Rewards Program or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

103. Defendant had a duty to truthfully represent the Rewards Program, which it breached.

104. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

105. Defendant's representations and omissions regarding the Rewards Program went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

106. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

107. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

108. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Products to participate in the Rewards Program.

109. Plaintiff would not have purchased the Products to participate in the Rewards Program or paid as much if the true facts had been known, suffering damages.

### Fraud

110. Defendant misrepresented and/or omitted the attributes and qualities of the Products to participate in the Rewards Program, and expected a program described with the term, "Rewards," would provide a thing of value, and that the Program was operated in compliance with this State's laws, which are intended to prevent customers from ending up with significant quantities of non-redeemable reward codes with no value.

111. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

112. Defendant knew of the issues described here yet did not address them.

113. Defendant's fraudulent intent is evinced by its knowledge that the Rewards Program was not consistent with its representations and expectations.

### Unjust Enrichment

114. Defendant obtained benefits and monies because the Rewards Program was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution, statutory penalties and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 6, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com