**UNITED STATES DISTRICT COURT
WESTER DISTRICT OF NEW YORK
BUFFALO DIVISION**

| | |
|---|---|
| Glenn Coe, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  - against -<br><br>The Coca-Cola Company,<br><br>     Defendant | 1:22-cv-00430-WMS |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Compel Arbitration and Dismiss

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 1

LEGAL STANDARDS ................................................................................................................ 2

ARGUMENT ................................................................................................................................ 3

I.     DEFENDANT'S ACTIONS ARE SUBJECT TO NEW YORK LAW ............................ 3

II.    THE ARBITRATION AGREEMENT IS NOT VALID ..................................................... 4

       A.    Defendant Cannot Show Agreement to Arbitrate ..................................................... 5

       B.    Classification of Defendant's Purported Agreement ................................................ 5

       C.    Plaintiff Was Not Put on Notice of the Terms .......................................................... 6

       D.    "Incorporation By Reference" Doctrine Excludes Arbitration Agreement ............... 8

III.   UNCONSCIONABILITY BARS COMPELLING ARBITRATION ................................ 9

       A.    Circumstances Surrounding Formation of the Agreement Render it Procedurally Unconscionable .................................................................................. 10

       B.    Evidentiary Hearing is Necessary to Determine Whether Defendant's "Terms" were Substantively Unconscionable ......................................................... 11

IV.   ISSUE OF ARBITRABILITY SHOULD BE DECIDED BY THE COURT ................... 12

CONCLUSION ........................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Abram Landau Real Est. v. Bevona*,
    123 F.3d 69 (2d Cir. 1997) ................................................................................. 5

*Arnaud v. Doctor's Assocs. Inc.*,
    821 Fed. Appx. 54 (2d Cir. 2020) ..................................................................... 10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................... 6

*AT&T Techs. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..................................................................................... 2, 16

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002) ............................................................................... 5

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003) ............................................................................... 2

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...................................................... 4, 7, 8, 9

*Biggs v. Midland Credit Mgmt., Inc.*,
    No. 17-cv-340, 2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018) ............................ 4

*Boelter v. Advance Mag. Publishers Inc.*,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016) .............................................................. 10

*Brennan v. Bally Total Fitness*,
    198 F. Supp. 2d 377 (S.D.N.Y. 2002) .............................................................. 13

*Chimart Assoc. v. Paul*,
    489 N.E.2d 231 (N.Y. 1986) .............................................................................. 3

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ........................................................................................... 6

*D'Antuono v. Serv. Rd. Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011) .............................................................. 14

*Dasher v. RBC Bank (USA)*,
    745 F.3d 1111 (11th Cir. 2014) ......................................................................... 4

*Desiderio v. Nat. Ass'n of Sec. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ............................................................................. 12

*Eisen v. Venulum Ltd.*,
  244 F. Supp. 3d 324 (W.D.N.Y. 2017) ................................................................. 5, 6

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................................ 16

*Fromer v. Comcast Corp.*,
  886 F. Supp. 2d 106 (D. Conn. 2012) ................................................................... 15

*Gillman v. Chase Manhattan Bank, N.A.*,
  534 N.E. 2d 824 (1988) ..................................................................................... 12, 15

*Green Tree Fin. Corp. Ala. v. Randolph*,
  531 U.S. 79 (2000) .................................................................................................... 6

*Harrington v. Atl. Sounding Co.*,
  602 F.3d 113 (2d Cir. 2010) ................................................................................... 14

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
  230 F.3d 549 (2d Cir. 2000) ..................................................................................... 5

*Klos v. Polskie Linie Lotnicze*,
  133 F.3d 164 (2d Cir. 1997) ................................................................................... 13

*Mehler v. Terminix Int'l Co. L.P.*,
  205 F. 3d 44 (2d Cir. 2000) ...................................................................................... 3

*Meyer v. Kalanick*,
  200 F. Supp. 3d 408 (S.D.N.Y. 2016) ................................................................... 10

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) .............................................................................. 7, 8, 9

*MHR Capital Partners LP v. Presstek, Inc.*,
  912 N.E.2d 43 (N.Y. 2009) ....................................................................................... 3

*Mulvaney Mech., Inc. v. Sheet Metal Workers*,
  351 F. 3d 43 (2d Cir. 2003) .................................................................................... 16

*Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*,
  203 F. Supp. 3d 312 (S.D.N.Y. 2016) .............................................................. 11, 12

*Naylor v. Valicenti*,
  No. 20-cv-6397, 2020 WL 6557666 (W.D.N.Y. Nov. 9, 2020) ............................. 2

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ........................................................................... 3, 7, 10

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ................................................................................................ 11

*Pippis v. Pippis*,
   892 N.Y.S. 2d 771 (2010) .................................................................................................... 16

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) ........................................................................................... 12, 14

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ............................................................................................................... 16

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 59 (2d Cir. 2000) .................................................................................................... 3

*Rightnour v. Tiffany & Co.*,
   239 F. Supp. 3d 744 (S.D.N.Y. 2017) ................................................................................... 3

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012) .................................................................................................. 4

*Simar Holding Corp. v. GSC*,
   928 N.Y.S. 2d 592 (2011) .............................................................................................. 15, 16

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
   999 F.3d 828 (2d Cir. 2021) .................................................................................................. 8

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ................................................................................................ 8, 9

*Starke v. SquareTrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019) ........................................................................................... 6, 8, 9

*State v. Wolowitz*,
   468 N.Y.S.2d 131 (1983) ..................................................................................................... 15

*Thorne v. Square, Inc.*,
   No. 20-cv-5119, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022) ............................................... 7

**Statutes**

9 U.S.C. § 4 .................................................................................................................................... 2

N.Y. Gen. Bus. Law § 349 ............................................................................................................. 1

N.Y. Gen. Bus. Law § 350 ............................................................................................................. 1

## INTRODUCTION

Plaintiff Glenn Coe ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Defendant The Coca-Cola Company ("Defendant" or "Coca-Cola") to Compel Arbitration of the allegations in the Complaint ("Compl."). ECF Nos. 1, 5.

Plaintiff brings claims for damages for violations of the New York General Business Law ("GBL") §§ 349 & 350, and the consumer protection laws of Montana, Maine, Wyoming, Idaho, West Virginia, Kansas, Iowa, and Utah, Compl. ¶¶ 67-81, breaches of warranty, Compl. ¶¶ 87-102, and common law claims, Compl. ¶¶ 103-114, on behalf of a class of individuals who participated in Defendant's rewards program known as "Coke Rewards." Compl. ¶¶ 1, 6. Plaintiff seeks monetary relief, expenses, and reasonable attorneys' fees. Compl. at 17, Prayer for Relief, ¶¶ 2-5.[1]

Defendant argues that Plaintiff's claims must be compelled to arbitration because he agreed to Coca-Cola's Terms of Use (the "Terms") which contain an agreement to arbitrate. *See* Memorandum of Law in Support of its Motion to Compel Arbitration and Dismiss ("Def. Mem.") at 6. ECF No. 5-1.[2] For the foregoing reasons, Defendant's Motion should be denied.

## FACTUAL BACKGROUND

Defendant sells beverages "which contain alphanumeric codes printed inside bottle caps that allow participation in its rewards program it manages to redeem these codes." Compl. ¶ 1. The "Coke Rewards" program (the "Program") began by offering customers the ability to redeem bottle caps and other proofs of purchase for things of value, however, the Program was modified years

---

[1] Plaintiff withdraws his claim for negligent misrepresentation and injunctive relief.
[2] In support of its Motion, Defendant provided the Declaration of K. Reneé Hugee ("Hugee Decl."), ECF No. 5-2, a copy of its "Create an Account" screen, ECF No. 5-3, Ex. A, a copy of the Terms, ECF No. 5-4, Ex. B., a copy of the My Coke Rewards "Program Rules," ECF No. 5-5, Ex. C, an updated version of the "Program Rules," dated Jan. 11, 2017, ECF No. 5-6, Ex. D, and a copy of The Coca-Cola Give – Donation Program "Terms and Conditions" dated Sept. 12, 2018, ECF No. 5-7, Ex. E.

later to eliminate or reduce the frequency of prizes and replaced with the ability to participate in raffles and contests. Compl. ¶¶ 6-7.

Had Plaintiff known that "the Rewards Program no longer provide[d] any things of value to customers," he "would not have participated in the Program or would have done so on different terms." Compl. ¶¶ 9, 40.

## LEGAL STANDARDS

Notwithstanding the strong national policy favoring arbitration evinced by Congress's enactment of the Federal Arbitration Act ("FAA"), "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Naylor v. Valicenti*, No. 20-cv-6397, 2020 WL 6557666, at *2 (W.D.N.Y. Nov. 9, 2020) citing *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); 9 U.S.C. § 4.

In the context of motions to compel arbitration brought under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment," meaning that "if there is an issue of fact as to the making of the agreement," then trial is necessary. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); 9 U.S.C. § 4.

In deciding a motion to compel arbitration, "the court must draw all reasonable inferences in favor of the non-moving party," and "generally apply state-law principles that govern the formation of contracts." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *Mehler v. Terminix Int'l Co. L.P.*, 205 F. 3d 44, 48 (2d Cir. 2000).

Under New York law, it is well settled that "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit, and unequivocal agreement to arbitrate." *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 750 (S.D.N.Y. 2017).

The "threshold question" in a dispute over the meaning of a contract "is whether the contract terms are ambiguous," because an unambiguous agreement "must be enforced according to the plain meaning of its terms." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000); *MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009).

However, if the terms are "reasonably susceptible of more than one interpretation," then the contract is ambiguous. *Chimart Assoc. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986).

## ARGUMENT

**I.  DEFENDANT'S ACTIONS ARE SUBJECT TO NEW YORK LAW**

Defendant's attempt to follow "the Georgia choice of law provisions in the Terms of Use, the Program Rules, and the Terms and Conditions" is mistaken for multiple reasons. Def. Mem. at 17 citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) and Hugee Decl. ¶¶ 18, 24, 26, 29, 38, 40.

First, any company engaging in the business of trading stamps in New York has agreed their activities "shall be governed solely by the provisions of [Article 29-E]." GBL § 578. The State Legislature established a procedure for "Claims by Rightful Holders of Trading Stamps" which lacks any references or allowances to arbitration. Compl. ¶ 15; GBL § 576.

To accept Defendant's reliance on a link in a terms of service compels arbitration undermines legislative authority which declared that anyone who "violat[es] any provision of [Article 29-E] shall be guilty of a misdemeanor." Compl. ¶ 16 citing GBL § 579(1).

Second, Defendant cannot "[r]ely[] on a contractual provision before a contract has been found."*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 387 (E.D.N.Y. 2015) citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012); *see also Biggs v. Midland Credit Mgmt., Inc.*, No. 17-cv-340, 2018 WL 1225539, at *6 (E.D.N.Y. Mar. 9, 2018) (applying New York law to

identify the existence of a contract, based on where the "plaintiff received the [] Agreement" and despite the contract's choice of Utah law).

Under Second Circuit precedent, "[w]hen parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue, absent a clear and unmistakable delegation of that authority to an arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) citing *Abram Landau Real Est. v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997).

To apply the law "selected" in the choice-of-law provision, the state must "ha[ve] sufficient contacts with the transaction," and here, there are "at most, minimal contacts between the contract and the" State of Georgia. *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 340 (W.D.N.Y. 2017) citing *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). Indeed, "[n]othing in the contracts, besides the choice-of-law provisions and the arbitration clauses, point to any contacts with [Georgia]." *Eisen*, 244 F. Supp. 3d at 340.

Due to the absence of "clear and unmistakable evidence" that the parties intended an arbitrator to decide matters of arbitrability, combined with the fact that "the contracts do not have 'sufficient contacts' to mandate the use of [Georgia] law," the Court should apply New York law to determine whether an agreement to arbitrate exists. *Eisen*, 244 F. Supp. 3d at 340.

II.    **THE ARBITRATION AGREEMENT IS NOT VALID**

Defendant argues that "Plaintiff must arbitrate his claims against Coca-Cola on an individual basis" because he "affirmatively assented to the[] arbitration provisions" by "enrolling in My Coke Rewards and continuing to participate in the 'Rewards Programs' over the years." Def. Mem. at 5-6.

However, this presumes the elements of a contract exist along with the absence of "generally applicable contract defenses, such as fraud, duress, or unconscionability," which "may

4

be applied to invalidate arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 335 (2011).

    A.    <u>Defendant Cannot Show Agreement to Arbitrate</u>

While Defendant asserts that "the FAA applies and requires enforcement of Plaintiff's agreement to arbitrate his claims against Coca-Cola," this disregards that there was no "meeting of the minds" and "a manifestation of mutual assent," a prerequisite to establish a legally enforceable agreement. Def. Mem. at 16-17 citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) and *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 89 (2000); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

    B.    <u>Classification of Defendant's Purported Agreement</u>

Other courts refer to these type of agreements as "sign-in-wrap," "[b]est described as a cross between 'clickwrap' and 'browsewrap,'" because they "do not require the user to click on a box showing acceptance of the 'terms of use' in order to continue." *Thorne v. Square, Inc.*, No. 20-cv-5119, 2022 WL 542383, at *7 (E.D.N.Y. Feb. 23, 2022) citing *Berkson*, 97 F. Supp. 3d at 394; *see also Nicosia*, 834 F. Supp. 3d at 264-67

According to the Hugee Declaration, "[t]o create an account, participants were required, among other things, to agree to Coca-Cola's 'Terms of Use' governing the My Coke Rewards Program, which were presented to users on the account creation page." Hugee Decl. ¶¶ 12-13.

Additionally, "[p]articipants confirmed their assent to Coca-Cola's Terms of Use by 'clicking' a 'checkbox' that appears next to language that reads, 'I agree to The Coca-Cola Company Terms of Use and Privacy Policy.' Both the 'Terms of Use' and 'Privacy Policy' are hyperlinked and accessible to users." Hugee Decl. ¶¶ 12-13.

What Defendant describes is what courts have characterized as "hybridwrap" agreements, because it "prompt[ed] [Plaintiff] to manifest assent to particular terms by engaging in some dual-purpose action, such as creating an account." *Nicosia*, 834 F. Supp. 3d at 264-67.

What is described is hardly the type of "clickwrap" other courts have found sufficient, such as a "scroll box" which presents to a user who cannot proceed lest he or she drag the cursor to the end of the terms. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

Accordingly, regardless of the precise nature of a web-based contract, "the ultimate question concerning inquiry notice on a motion to compel arbitration remains the same – namely, whether 'the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) quoting *Meyer*, 868 F.3d at 76.

    C.    <u>Plaintiff Was Not Put on Notice of the Terms</u>

As there are infinite ways to design a website or smartphone application, and "not all interfaces fit neatly into the clickwrap or browsewrap categories," courts will deny motions to compel arbitration where "the arbitration clause was not 'reasonably conspicuous'" or the party seeking to avoid arbitration "did not 'unambiguously manifest' intent to be bound." *Meyer*, 868 F.3d at 75; *Soliman*, 999 F.3d at 833.

Even where the offeree "does not have *actual* notice of the contract terms, []he will still be bound by such terms if a 'reasonably prudent' person would be on *inquiry* notice of those terms and []he unambiguously manifested assent to those terms." *Soliman*, 999 F.3d at 834 citing *Starke*, 913 F.3d at 289 (emphasis in original).

An arbitration clause is not "reasonably conspicuous" "if a reasonably prudent user would not have had at the very least inquiry notice of the [arbitration clause]." *Soliman*, 999 F.3d at 833; *Berkson*, 97 F. Supp. 3d at 401.

6

Inquiry notice is "actual notice of circumstances sufficient to put a prudent [person] upon inquiry," which happens "if they are presented in a clear and conspicuous manner." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 n.14 (2d Cir. 2002); *Starke*, 913 F.3d at 289. Accordingly, the court here "must first determine if [Defendant's] terms of use – and by extension, the arbitration provision contained therein – were reasonably clear and conspicuous such that a reasonable person in Soliman's shoes would have been on inquiry notice of them." *Meyer*, 868 F.3d at 74-75.

Here, Plaintiff did not "unambiguously manifest[] assent to th[e] terms" of the arbitration provision, as he never actually viewed the terms, and they were not "presented in a clear and conspicuous manner." *Meyer*, 868 F.3d at 75; *Specht*, 306 F.3d at 30.

Further, because the provision containing the arbitration clause was "buried at the bottom of a webpage or tucked away in [an] obscure corner[]," "the site design [fails to] bring[] the consumer's attention to 'material terms that would alter what a reasonable consumer would understand to be h[is] default rights.'" *Scotti*, 97 N.Y.S. 3d at 834; *Berkson*, 97 F. Supp. 3d at 401.

It is significant to note that the design of the interface does not "brings the consumer's attention to 'material terms that would alter what a reasonable consumer would understand to be h[is] default rights when initiating an online [transaction],'" such as a mandatory arbitration provision. *Berkson*, 97 F. Supp. 3d at 401.

Where, as is the case here, "contractual terms as significant as ... the right to sue in court are accessible only via a small and distant hyperlink ... with text about agreement thereto presented even more obscurely, there is a genuine risk that a fundamental principle of contract formation will be left in the dust: the requirement for a manifestation of mutual assent." *Scotti*, 97 N.Y.S. 3d at 834 citing *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 421 (S.D.N.Y. 2016).

Defendant does not contend that Plaintiff was on actual notice of the Terms, the agreement "never requires an individual to read [] any terms of service," and "fails to obtain any form of consent from – or provide effective notice to" its customers. *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016).

Indeed, other courts have determined that Plaintiff should "be forgiven for assuming that 'Terms of [Use]' refers to a description of the types of services that [Defenant] intends to provide, not to the user's waiver of his constitutional right to a jury trial or his right to pursue legal redress in court." *Kalanick*, 200 F. Supp. 3d at 421.

Accordingly, "since the terms and conditions were not reasonably clear and conspicuous," or at the very least, "reasonable minds could disagree" about whether Defendant "put the user on inquiry notice of [Coca-Cola's] hyperlinked terms and conditions," Plaintiff "was not on notice of the arbitration provision" and "no arbitration agreement existed between the parties." *Arnaud v. Doctor's Assocs. Inc.*, 821 Fed. Appx. 54, 56 (2d Cir. 2020) citing *Nicosia*, 834 F.3d at 233.

D. <u>"Incorporation By Reference" Doctrine Excludes Arbitration Agreement</u>

Defendant contends that Plaintiff "created an account with Coca-Cola in 2015, through which he participated in Coca-Cola's rewards programs," and that "[i]n order for Plaintiff to create an account," he had to "agree[] to the mandatory arbitration provisions set forth in the Program Rules and Terms of Use." Def. Mem. at 7 citing Hugee Decl. ¶¶ 6-7.

Defendant appears to argue that since "[t]o create an account, participants were required to affirmatively agree to comply with Coca-Cola's 'Terms of Use' governing the My Coke Rewards Program, which were presented to users on the account creation page," that the Arbitration Provision is "incorporated by reference." Def. Mem. at 7.

For a document to be "incorporated by reference," New York law requires it be "clearly identified in the agreement," and that "the contract contains 'language that clearly communicates

8

that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely to acknowledge that the referenced material is relevant to the contract.'" *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 321 (S.D.N.Y. 2016) quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996).

Defendant argues that "[p]articipants confirm their assent to Coca-Cola's Terms of Use by 'clicking' a 'checkbox' that appears next to language that reads, 'I agree to The Coca-Cola Company Terms of Use and Privacy Policy." Def. Mem. at 7 citing Hugee Decl. ¶ 12.

However, this language is insufficient because it "does not specifically identify the [arbitration] agreement," which is "not even mentioned," and it "do[es] not expressly incorporate the [arbitration] agreements by reference," as "nothing in the [language] suggests that [users] agreed to abide by the terms of the underlying [] policies, much less the [arbitration] agreement." *Beelman Truck*, 203 F. Supp. 3d at 322. Accordingly, Plaintiff "cannot be compelled to arbitrate under a theory of incorporation by reference." *Beelman Truck*, 203 F. Supp. 3d at 322.

**III.   UNCONSCIONABILITY BARS COMPELLING ARBITRATION**

Though Defendant argues that "Plaintiff's claims must be arbitrated" because he "enroll[ed] in My Coke Rewards and continu[ed] to participate in the 'Rewards Programs' over the years," this disregards that the purported agreement "is unconscionable and, therefore, unenforceable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E. 2d 824, 833 (1988).

A contract or arbitration provision is unconscionable "when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are

9

unreasonably favorable to the other party." *Desiderio v. Nat. Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999).

To avoid a contract based on a showing of unconscionability, "there must be a showing that such a contract is both procedurally and substantially unconscionable." *Gillman*, 534 N.E. 2d at 833.

  A. <u>Circumstances Surrounding Formation of the Agreement Render it Procedurally Unconscionable</u>

The Hugee Declaration provided that "[i]f an individual failed to click the 'checkbox' or otherwise failed to accept the Terms of Use (including the mandatory arbitration agreement), an individual could not create an account to participate in the Programs." Hugee Decl. ¶ 14.

Accordingly, Defendant's purported agreement should be considered a "contract of adhesion," because it is a "standard-form contract[] offered by [a] large, economically powerful corporation[] to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997).

Here, all the elements of a procedurally unconscionable agreement are present. There is clear "inequality in bargaining power," as Defendant is the "largest carbonated beverage seller in the world based on its flagship product, Coca-Cola." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002); Compl. ¶ 50.

The agreement's "take-it-or-leave-it" basis was sufficient to constitute "high pressure tactics that coerce[d] [Plaintiff's] acceptance of onerous terms [because he] lacked a meaningful choice" if he wanted to participate. *Brennan*, 198 F. Supp. 2d at 382.

Nowhere in Defendant's papers does it address how its actions undermine substantive law in the form of Article 29-E, which establishes an exclusive method of trading stamp redemption,

which is inconsistent with arbitration under laws of a different state. Since the FAA follows the law of contracts, which consider illegality grounds to void an underlying transaction, the Court should decline to enforce the arbitration agreement, which contravene specific statutory remedies.

Further, Second Circuit precedent directs the Court to consider a plaintiff's presumed "lack of sophistication" in legal matters, and determine whether he understood "the word 'arbitration' [or] was []familiar with his legal remedies," or whether he had the opportunity to "ask[] questions about [the agreement]," "take[] the [] documents home to study them," or "consult[] a lawyer." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 128 (2d Cir. 2010); *Ragone*, 595 F.3d at 120.

In fact, of the 8,146 words within the 8 page long "Terms of Use and Sale" document, only 501 words contained on less than one page, or roughly 6% of the content, are devoted to the arbitration and class action waiver provision. Of the 26 discrete sections, all but one are devoted to issues directly relating to sales, fees, intellectual property, etc. ECF No. 5-4.

That the "agreement" was procedurally unconscionable is consistent with Second Circuit precedent, which instructs courts to consider whether the arbitration clause was "hidden in a maze of fine print," where "no effort was made to alert [Plaintiff] directly to the existence of the provision[], [and because] the parties had unequal bargaining power." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 328 (D. Conn. 2011).

Plaintiff's "inability to opt out of the arbitration provision" is further support for a finding that the contract was procedurally unconscionable. *See Fromer v. Comcast Corp.*, 886 F. Supp. 2d 106, 112 (D. Conn. 2012).

    B.    <u>Evidentiary Hearing is Necessary to Determine Whether Defendant's "Terms" were Substantively Unconscionable</u>

While determinations of unconscionability are normally based on a showing of both procedural and substantive unconscionability, "there have been exceptional cases where a

11

provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability." *Gillman*, 534 N.E. 2d at 835.

Examples of substantively unconscionable contract provisions "are virtually limitless, but include inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *Simar Holding Corp. v. GSC*, 928 N.Y.S. 2d 592, 595 (2011) citing *State v. Wolowitz*, 468 N.Y.S. 2d 131, 145 (1983).

Where there is doubt as to whether a purported agreement is unconscionable, "there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose, and effect." *Simar Holding*, 928 N.Y.S. 2d at 595.

Further, "whether the record presents an issue as to the existence of unconscionability which should not be resolved without a hearing" is an issue that should be determined in a motion for summary judgment. *Simar Holding*, 928 N.Y.S. 2d at 595 quoting *Wolowitz*, 468 N.Y.S. 2d at 146.

Accordingly, "a hearing [is] necessary to determine whether the procedures employed by [Defendant] in soliciting" Plaintiff's agreement to the Terms, "along with [Plaintiff's] lack of legal representation throughout the negotiation process, served to deprive [him] of a 'meaningful choice' in entering into the contract." *Simar Holding*, 928 N.Y.S. 2d at 595 citing *Pippis v. Pippis*, 892 N.Y.S. 2d 771, 772 (2010).

## IV. ISSUE OF ARBITRABILITY SHOULD BE DECIDED BY THE COURT

Under the FAA and New York precedent, "there is a general presumption that the issue of arbitrability should be resolved by the courts." *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *see also Mulvaney Mech., Inc. v. Sheet Metal Workers*, 351 F. 3d 43, 45 (2d Cir. 2003) (noting that "questions of arbitrability" are to be resolved by the courts).

Indeed, the issue of whether the parties agreed to arbitrate is a matter to be decided by the courts and not the arbitrators, "[u]nless the parties clearly and unmistakably provided otherwise." *AT&T Techs.*, 475 U.S. at 649. The proper inquiry is whether "there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s]." *Contec*, 398 F. 3d at 208 (emphasis in original).

Accordingly, because Plaintiff here is directly "challeng[ing] the validity of the [arbitration] provision specifically," "the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file an Amended Complaint.

Dated:     November 9, 2022

                                                                 Respectfully submitted,

                                                                 Sheehan & Associates, P.C.
                                                                 /s/Spencer Sheehan
                                                                 60 Cuttermill Rd Ste 412
                                                                 Great Neck NY 11021
                                                                 Tel: (516) 268-7080
                                                                 spencer@spencersheehan.com

**Certificate of Service**

I certify that on November 9, 2022, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan