UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLENN COE, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>      v.<br><br>THE COCA-COLA COMPANY,<br><br>                        Defendant. | No. 1:22-cv-00430<br><br>Hon. William M. Skretny |

**DEFENDANT THE COCA-COLA COMPANY'S
REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY ACTION**

Angela M. Spivey (*admitted pro hac vice*)
Andrew G. Phillips (*admitted pro hac vice*)
Alan F. Pryor (*admitted pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
angela.spivey@alston.com
andrew.phillips@alston.com
alan.pryor@alston.com

Steven L. Penaro, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9471
steve.penaro@alston.com

*Counsel for The Coca-Cola Company*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Plaintiff Had Notice of the Arbitration Provision and Agreed to Be Bound .......... 3

    B. Plaintiff's Arbitration Agreement Is Not Unconscionable ..................................... 7

    C. Plaintiff Is Not Entitled to an Evidentiary Hearing or Leave to Amend .............. 10

III. CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abreu v. Fairway Mkt. LLC*,
   No. 17-CV-9532 (VEC), 2018 U.S. Dist. LEXIS 124452 (S.D.N.Y. July 24, 2018) .............10

*Arnaud v. Doctor's Assocs.*,
   821 F. App'x 54 (2d Cir. 2020) ......................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)....................................................................................................................8

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) ..........................................................................................7

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
   346 F.3d 360 (2d Cir. 2003)........................................................................................................3

*Castillo v. Plaza Motors of Brooklyn, Inc.*,
   No. 20-CV-4337 (NGG) (PK), 2021 U.S. Dist. LEXIS 258947 (E.D.N.Y. Sep. 14,
   2021) .........................................................................................................................................10

*Catz v. Precision Glob. Consulting*,
   19 Civ. 7499 (ER), 2021 U.S. Dist. LEXIS 78626 (S.D.N.Y. Apr. 23, 2021) ........................10

*Chang v. Warner Bros. Entm't, Inc.*,
   19 Civ. 2091 (LAP), 2019 U.S. Dist. LEXIS 181781 (S.D.N.Y. Oct. 21, 2019) ......................9

*Edwards v. Macy's Inc.*,
   No. 14CV-8616-CM-JLC, 2015 U.S. Dist. LEXIS 86816 (S.D.N.Y. June 30, 2015) ..............9

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020).........................................................................................6

*Friedman v. Ellis*,
   No. 18EV004804, 2020 Ga. State LEXIS 2630 (Ga. State Ct. Fulton Cnty., Apr. 2,
   2020) ...........................................................................................................................................3

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)......................................................................................................................9

*Hopkins v. World Acceptance Corp.*,
   798 F. Supp. 2d 1339 (N.D. Ga. 2011) .......................................................................................9

*Int'l Mins. & Res., S.A. v. Pappas*,
   96 F.3d 586 (2d Cir. 1996)..........................................................................................................3

*Meyer v. Kalanick*,
    200 F. Supp. 3d 408 (S.D.N.Y. 2016)..................................................................................6

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)............................................................................................ passim

*Mumin v. Uber Techs., Inc.*,
    239 F. Supp. 3d 507 (E.D.N.Y. 2017) ...............................................................................8, 9

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019) ...................................................................................8

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)...................................................................................................7

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998).................................................................................................2, 6

*Ragone v. Atl. Video*,
    595 F.3d 115 (2d Cir. 2010)...............................................................................................8, 9

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)...................................................................................................7

*Scotti v. Tough Mudder Inc.*,
    97 N.Y.S.3d 825 (N.Y. App. Div. 2019) ...............................................................................6

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
    999 F.3d 828 (2d Cir. 2021)...................................................................................................7

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002).....................................................................................................7

*Starke v. Squaretrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019)...................................................................................................7

*Thorne v. Square, Inc.*,
    No. 20-cv-5119, 2022 U.S. Dist. LEXIS 31810 (E.D.N.Y. Feb. 23, 2022) ..................3, 4, 5, 7

I.   **INTRODUCTION**

The Coca-Cola Company moved to compel arbitration because the undisputed evidence—not arguments of counsel—shows that Plaintiff agreed to arbitrate his claims about Coca-Cola's "Rewards Programs." *See* Mem. Law in Supp. to Mot. Compel (Dkt. 5-1) ("Motion"); Decl. of Renee Hugee (Dkt 5-2). Plaintiff's opposition brief shows that he has no legitimate basis to dispute that the Court should compel arbitration. *See generally* Mem. Law in Opp'n to Mot. Compel (Dkt. 11) ("Opposition"). As he must, Plaintiff does not quibble with any of the facts presented in Coca-Cola's Motion or supporting declaration, nor does he seek to introduce any evidence as rebuttal. It is thus undisputed that:

- Plaintiff participated in the Rewards Programs since at least 2016 and has used Coca-Cola's website to do so;

- Plaintiff created an online account with Coca-Cola, which he used to enroll in Coca-Cola's Rewards Programs;

- To create his online account, Plaintiff "clicked" a "checkbox" appearing next to language that read, "I agree to The Coca-Cola Company Terms of Use and Privacy Policy[,]" which was bolded, underlined, and hyperlinked to the complete Terms of Use and Privacy Policy;

- Plaintiff was provided the My Coke Rewards Program Rules and the Coca-Cola Give Terms and Conditions upon enrolling in those programs;

- Plaintiff agreed to the My Coke Rewards Program Rules, Coca-Cola Give Terms and Conditions, and Coca-Cola Terms of Use, and he could not have participated in the Rewards Programs unless he did so; and

- The My Coke Rewards Program Rules, Coca-Cola Give Terms and Conditions, and Coca-Cola Terms of Use contain substantially similar arbitration provisions that apply to this dispute.

*See* Mot., at 2-10.

Tellingly, Plaintiff does not break with *any* of these facts but instead offers a kitchen sink of red herrings that fly in the face of settled caselaw, including decisions cited in Plaintiff's own briefing. Fixating on the Terms of Use, Plaintiff complains that Coca-Cola's Motion does not

sufficiently demonstrate that he was on "actual notice" of or "unambiguously manifest[ed]" his intent to be bound to the Terms of Use. *See* Opp'n at 4-9. Next, he suggests without support that the arbitration agreement is procedurally unconscionable, and, confusingly, seeks a pointless "evidentiary hearing" to consider the substantive conscionability of an arbitration provision that is already in the record. *See id.* at 9-12. Of course, Plaintiff cannot rest on conclusory argument and his own subjective desire to reject his clear agreements to arbitrate. *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998). Even still, his arguments fall before settled caselaw, regardless of whether Georgia or New York law applies.

Given these uncontroverted facts, and under settled Georgia and New York law, Plaintiff Coe is bound to arbitrate his claims against Coca-Cola. The Court, therefore, should grant Coca-Cola's Motion and compel that Plaintiff do what he unambiguously agreed to do.

## II.   ARGUMENT

Coca-Cola's Motion makes clear that Plaintiff agreed to arbitrate his claims against Coca-Cola <u>three-times over</u> pursuant to the: (a) Coca-Cola Terms of Use; (b) My Coke Rewards Program Rules; and (c) Coca-Cola Give Terms and Conditions. *See* Mot. at 13-18. In his Opposition, though, Plaintiff pays no heed to the Program Rules or Terms and Conditions (which provide independent bases to grant Coca-Cola's Motion) and instead dedicates his Opposition to arguing that the Court should not enforce his agreement to arbitrate his claims under Coca-Cola's Terms of Use. *See generally* Opp'n. Plaintiff's complete disregard for two of Coca-Cola's three independent bases for arbitration alone moots his opposition. Regardless, his limited challenge to the Terms of Use fails under a straightforward analysis under both Georgia and New York law.[1]

---

[1] Plaintiff's dispute that New York law applies is both wrong and beside the point. *See* Opp'n at 3-4. It is by no means clear that New York law would apply because a court is to apply the law selected in the contract as long as "the State selected has sufficient contacts with the

### A. Plaintiff Had Notice of the Arbitration Provision and Agreed to Be Bound

Plaintiff cannot credibly argue that he lacked adequate notice of the arbitration provision in the Terms of Use or deny that he agreed to them when he created his Coca-Cola account and enrolled in the My Coke Rewards Program. *See* Opp'n at 5-9. Indeed, Plaintiff does not dispute that when he created his account, he "click[ed]" the "checkbox" immediately next to the language "**I agree to The Coca-Cola Company Terms of Use and Privacy Policy.**" *See* Mot. at 3 (citing Hugee Decl. ¶ 12, Ex. A). Nor does he dispute that the "Terms of Use" and "Privacy Policy" are bolded, underlined, and hyperlinked to the full Terms of Use and Privacy Policy. *See id.* Accordingly, regardless of whether Georgia or New York law applies, the undisputed facts show both that Coca-Cola "provided reasonably conspicuous notice of the Terms of [Use] . . . . [and that Plaintiff] unambiguously manifested his assent to [Coca-Cola's Terms of Use]." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-80 (2d Cir. 2017); *accord Friedman v. Ellis,* No. 18EV004804, 2020 Ga. State LEXIS 2630, at *10 (Ga. State Ct. Fulton Cnty., Apr. 2, 2020).

These conclusions are consistent with New York law, including cases cited in Plaintiff's own briefing. *See* Opp'n at 5 (quoting *Thorne v. Square, Inc.*, No. 20-cv-5119, 2022 U.S. Dist. LEXIS 31810, at *18 (E.D.N.Y. Feb. 23, 2022)), at 6 (quoting *Uber Techs., Inc.*, 868 F.3d at 75). Indeed, contrary to Plaintiff's cherry-picked quotations, both *Uber Technologies* and *Thorne* are virtually indistinguishable from this case and cut strongly against Plaintiff. The Second Circuit observed that an uncluttered enrollment screen that advised individuals that "By creating an Uber account, you agree to the Terms of Service & Privacy Policy" and that hyperlinked the terms

---

transaction." *Int'l Mins. & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996). Even setting aside the choice of law provisions, that Coca-Cola's principal place of business lies in Georgia favors applying Georgia law. *See* Decl. Renee Hugee (Dkt. 5-2) ("Hugee Decl.") ¶ 3; *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003). The Court, however, need not determine which law applies because New York and Georgia law both make clear that Plaintiff's arguments fail and that the Court should compel Plaintiff to arbitrate his claims.

containing the arbitration provision—virtually identical to the page at issue here—"provided reasonably conspicuous notice" consistent with New York and California law.[2]  *Uber Techs., Inc.*, 868 F.3d at 78-79.  A copy of the *Uber Technologies* enrollment screen is shown here:



*Id.*, Addendum B; *cf.* Hugee Decl. ¶ 12, Ex. A (Dkt. 5-3).  The Second Circuit also found that—similar to Plaintiff's clicking the checkbox and "Submit" button on the Coca-Cola registration page—by clicking the "Register" button the plaintiff "unambiguously manifested his assent to Uber's Terms of Service[,]" including the arbitration provision, because "[a] reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."  *Uber Techs., Inc.*, 868

---

[2] Much like here, the Second Circuit observed that it did not need to wade into the question of whether New York or California law applied to the arbitration provision in *Uber Technologies* because "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term."  868 F.3d at 74.

4

F.3d at 79-80. Following the Second Circuit's guidance, another court concluded that a similar layout (which also hyperlinked the Terms of Service containing the arbitration provision) provided reasonably conspicuous notice and that users "unambiguously manifested assent to those terms" with similar conduct in enrollment. *Thorne*, 2022 U.S. Dist. LEXIS 31810, at *19-34.

Faced with the reality that he must arbitrate his claims, Plaintiff obfuscates. ***First***, Plaintiff mischaracterizes the Second Circuit's opinion in *Uber Technologies* by arguing that the Coca-Cola enrollment page is "is hardly the type of 'clickwrap' other courts have found sufficient[.]" Opp'n at 6. A cherry-picked citation, however, does not rebut the fact that the Second Circuit compelled arbitration in circumstances virtually indistinguishable to the Coca-Cola registration page and Terms of Use here. Moreover, in compelling arbitration the Second Circuit expressly rejected the view that only "clickwrap" agreements will suffice. *See Uber Techs.*, 868 F.3d at 75-76 ("Of course, there are infinite ways to design a website or smartphone application, and . . . . [c]lassification of web-based contracts alone, however, does not resolve the notice inquiry."); *accord Thorne*, 2022 U.S. Dist. LEXIS 31810, at *19-34.

***Second***, even had Plaintiff submitted evidence (which he does not) that "he never actually viewed the terms[,]" Plaintiff cannot rely on his failure to read the Terms of Use to avoid arbitration. Opp'n at 7. Whether Plaintiff "actually viewed" the Terms of Use has no bearing on whether a webpage provides "reasonably conspicuous notice." *See Uber Techs.*, 868 F.3d at 79; *Thorne*, 2022 U.S. Dist. LEXIS 31810, at *19-34 ("Whether Plaintiffs bother[ed] to read the additional terms is of no moment; the user is still on inquiry notice.") (cleaned up); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("Whether [plaintiff] actually clicked on the hyperlinked terms to read the [Terms of Service] or the Privacy Policy is immaterial; what matters is that the notice of these terms was reasonably conspicuous.").

***Third***, Plaintiff relies on bad law and bad reasoning to suggest the Court may "forgive[]" any failure to review the Terms of Use.  *See* Opp'n at 8 (quoting *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 421 (S.D.N.Y. 2016)).  In *Uber Technologies*, the Second Circuit **vacated** the very order that Plaintiff cites as support.  868 F.3d at 80.  In doing so, the Second Circuit rejected *Kalanick*'s reasoning that a "reasonable user might be forgiven" for making assumptions about terms of service that they neglected to read, *Kalanick*, 200 F. Supp. 3d at 421, concluding instead that "[w]hile it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice[,]" *Uber Techs.*, 868 F.3d at 78; *see also Oldroyd,* 134 F.3d at 77 (rejecting the plaintiff's "conclusory allegation" about his subjective intent about the scope of an arbitration agreement).[3]

***Fourth***, Plaintiff cannot rely on misleading quotations to misrepresent that the Terms of Use hyperlink was "buried at the bottom of a webpage or tucked away in an obscure corner[.]"[4]

---

[3] Many of the cases cited in Plaintiff's briefing rest on the same faulty premise expressed in *Kalanick* and that the Second Circuit rejected in *Uber Technologies*. *See, e.g.*, Opp'n at 7 (citing *Scotti v. Tough Mudder Inc.*, 97 N.Y.S.3d 825, 834 (N.Y. App. Div. 2019)).  For instance, the trial court in *Scotti* expressly analyzed and relied on *Kalanick* on a motion to compel, and the Court, therefore, should disregard it for resting on a faulty decision and reasoning vacated by the Second Circuit.  Moreover, *Scotti* is distinguishable: the agreement there was unclear whether the arbitration provision was a part of a "waiver" that the plaintiff agreed to, unlike here where the arbitration provision is plainly set forth in the Coca-Cola Terms of Use.

[4] Indeed, to press the fiction that Coca-Cola failed to provide reasonably conspicuous notice of the Terms of Use, Plaintiff relies on a slew of inapposite cases that analyze starkly different facts. *See* Opp'n at 5-8.  This case does not present a situation where Coca-Cola's page: (a) failed to identify the Terms of Use in any meaningful way, *see Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021), *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir. 2002), *Arnaud v. Doctor's Assocs.*, 821 F. App'x 54, 56-57 (2d Cir. 2020); (b) buried the Terms of Use hyperlink in a hopelessly cluttered and dense page, *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016), *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 296 (2d Cir. 2019); or (c) did not clearly call for Plaintiff's agreement to the Terms of Use, *see Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).  Indeed, the Second Circuit concluded that these distinctions warranted ***reversing*** the trial court and compelling arbitration. *Uber Technologies*, 868 F.3d at 80.

Opp'n at 7.  Far from "buried" or "tucked away," the "checkbox" and hyperlinked language "**I agree to The Coca-Cola Company Terms of Use and Privacy Policy**" feature at least as prominently as the operative disclosures in *Uber Technologies* and *Thorne*.  Similarly, Plaintiff's "incorporation by reference" argument does not detract from the conclusions that Coca-Cola provided reasonably conspicuous notice of the Terms of Use.  *See* Opp'n at 8-9.

*Finally*, Plaintiff cannot legitimately question that he "unambiguously manifested his assent" to Coca-Cola's Terms of Use.  Opp'n at 7.  Just as in *Uber Technologies* and *Thorne*, here it is undisputed that Plaintiff took "affirmative action to demonstrate assent[.]"  *Thorne*, 2022 U.S. Dist. LEXIS 31810, at *31.  "A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."  *Uber Techs.*, 868 F.3d at 79–80.  Moreover, Plaintiff does not dispute that he continued to participate in Coca-Cola's Rewards Programs since registering for an account.  He thus "clearly contemplated some sort of continuing relationship [with Coca-Cola], one that would require some terms and conditions, and the [account creation screen] provided clear notice that there were terms that governed that relationship."  *Uber Techs.*, 868 F.3d at 80.

    **B.**    **Plaintiff's Arbitration Agreement Is Not Unconscionable**

Plaintiff next seeks to avoid his contractual obligations by complaining that the arbitration provision governing the parties is "unconscionable."  *See* Opp'n at 14-16.  As an initial matter, however, a court will find that an agreement is unconscionable only when it is it is "so grossly unreasonable or unconscionable" in light of the "mores and business practices" when made.  *Ragone v. Atl. Video*, 595 F.3d 115, 121 (2d Cir. 2010).  Moreover, to invalidate an agreement on unconscionability grounds, a court must find that the agreement is both "procedurally and substantively unconscionable when made."  *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525

(E.D.N.Y. 2017). Plaintiff fails to demonstrate how this case constitutes such an exceptional circumstance that the arbitration provision is procedurally or substantively unconscionable.[5]

*First*, Plaintiff's sweeping statement that "all the elements of a procedurally unconscionable agreement are present" lacks substance and fails under settled contract principles. Again, the caselaw cited in Plaintiff's Opposition rebuts his position. *See* Opp'n at 9, 11 (quoting *Ragone v. Atlantic Video*, 595 F.3d 115, 120-21 (2d Cir. 2010)). The Second Circuit rejected many of the arguments that Plaintiff now raises here, observing that: (a) "mere inequality in bargaining power is not a basis for declining to enforce arbitration agreements"; (b) presenting an arbitration "on a 'take it or leave it' basis . . . is not sufficient under New York law to render the arbitration provision procedurally unconscionable"; and (c) an employee's relative lack of sophistication and "imperfect grasp of the English language will not" invalidate an arbitration provision. *Ragone*, 595 F.3d at 121-22. Other courts are in accord. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017); *Hopkins v. World Acceptance Corp.,* 798 F. Supp. 2d 1339, 1346 (N.D. Ga. 2011). Moreover, it remains unclear how Plaintiff faced "high pressure tactics," was "coerced," or was deprived of an opportunity to "study" the arbitration provision. *See* Opp'n at 11. To the contrary, the Second

---

[5] Plaintiff makes no effort to reconcile his unconscionability arguments with the U.S. Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, which held that judicial doctrines that "stand[] as [] obstacle[s] to" the liberal federal policy favoring arbitration are preempted. 563 U.S. 333, 352 (2011); *see also Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 265 (E.D.N.Y. 2019) (observing that the court's analysis of the arbitration provision on unconscionability grounds is "very limited" after *Concepcion*). Indeed, Plaintiff asks that the Court find that the existence of New York's trading stamps statutes invalidates enforcement of the arbitration agreement here. But where state law or a judicial rule "prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the [Federal Arbitration Act]." *Concepcion*, 563 U.S. at 341. Thus, to the extent Plaintiff's unconscionability arguments stray from pure contract principles, those arguments fail.

8

Circuit upheld a similarly innocuous registration process in *Uber Technologies* as that here, which "allowed [Plaintiff] to review the Terms of Service prior to registration[.]" 868 F.3d at 80.

Similarly, Plaintiff's recitation of word counts and percentages is beside the point. *See* Opp'n at 11. The Terms of Use takes advantage of headings, bolded, and capitalized terms to call users' attention to the presence of the arbitration provision. *See* Hugee Decl. ¶¶ 16-18, Ex. B. Courts have held that even "[a]n arbitration agreement contained in small font cannot be voided if it is the same size as the rest of the text[.]" *Edwards v. Macy's Inc.*, No. 14CV-8616-CM-JLC, 2015 U.S. Dist. LEXIS 86816, at *19-20 (S.D.N.Y. June 30, 2015); *see also Chang v. Warner Bros. Entm't, Inc.*, 19 Civ. 2091 (LAP), 2019 U.S. Dist. LEXIS 181781, at *9 (S.D.N.Y. Oct. 21, 2019) ("Despite [the plaintiff's] claim that the arbitration clause is 'buried' in the Agreement, it covers over one full page in a relatively short, eleven-page document, references 'arbitration' over twenty times, and is not in fine print or in any way hidden."). The Terms of Use, therefore, do much more than what the law requires, and the Court should not "void a valid agreement based on Plaintiff's failure to read the terms and conditions that were presented to [him]." *Edwards*, 2015 U.S. Dist. LEXIS 86816, at *20.

**Second**, Plaintiff does not attempt to argue that the arbitration provision is substantively unconscionable, and the Court need not consider this question. *See Mumim*, 239 F. Supp. 3d at 526 (observing that because the plaintiffs could not "make the necessary showing of procedural unconscionability, the court need not decide whether the delegation of arbitrability is substantively unconscionable."). Nevertheless, this case does not present an exceptional case when the terms are so "grossly unreasonable" that they are substantively unconscionable, and Plaintiff fails to show otherwise. *See Castillo v. Plaza Motors of Brooklyn, Inc.*, No. 20-CV-4337 (NGG) (PK), 2021 U.S. Dist. LEXIS 258947, at *13 (E.D.N.Y. Sep. 14, 2021).

In sum, Coca-Cola's Motion concerns basic arbitration clauses that are enforceable regardless of whether New York or Georgia law applies.

### C. Plaintiff Is Not Entitled to an Evidentiary Hearing or Leave to Amend

Finally, the Court should reject Plaintiff's unfounded, last-ditch requests that he be granted either an evidentiary hearing to determine whether the arbitration provision is substantively unconscionable or, at a minimum, leave to amend. Opp'n at 11-13. As an initial matter, it remains unclear what new information Plaintiff hopes to unearth when the relevant evidence—the Terms of Use—is already in the record. "[T]he substantive element [of the unconscionability analysis] looks to the content of the contract[.]" *Castillo*, 2021 U.S. Dist. LEXIS 258947, at *8. Even if other evidence were relevant to the substantive unconscionability analysis, Plaintiff submits **no** grounds by which the Court could conclude an evidentiary hearing would be appropriate.

Plaintiff similarly provides no basis for the Court to grant him leave to amend. Plaintiff identifies no facts which he would include in an amended complaint and fails to explain how he could otherwise avoid his obligation to arbitrate his claims. Indeed, Plaintiff's Opposition makes clear that any new allegations could not change the conclusion that the Court should compel arbitration. *See, e.g.*, *Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532 (VEC), 2018 U.S. Dist. LEXIS 124452, at *3 (S.D.N.Y. July 24, 2018); *Catz v. Precision Glob. Consulting*, 19 Civ. 7499 (ER), 2021 U.S. Dist. LEXIS 78626, at *41 (S.D.N.Y. Apr. 23, 2021). Therefore, Plaintiff's requests for an evidentiary hearing and/or leave to amend his Complaint should be denied.

### III. CONCLUSION

Rather than rebut, Plaintiff's Opposition confirms that he is bound to arbitrate his claims against Coca-Cola. The Court, therefore, should grant Coca-Cola's Motion and dismiss (or, in the alternative, stay) this action.

10

Dated: November 16, 2022

                                              Respectfully submitted,

*/s/ Steven L. Penaro*
Angela M. Spivey (*admitted pro hac vice*)
Andrew G. Phillips (*admitted pro hac vice*)
Alan F. Pryor (*admitted pro hac vice*)
Alston & Bird LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
angela.spivey@alston.com
andrew.phillips@alston.com
alan.pryor@alston.com

Steven L. Penaro, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9471
steve.penaro@alston.com

*Counsel for The Coca-Cola Company*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 16, 2022, I caused the foregoing documents to be served upon all counsel of record via the Court's CM/ECF system and email.

                                            */s/ Steven L. Penaro*
                                            Steven L. Penaro, Esq.
                                            ALSTON & BIRD LLP
                                            90 Park Avenue
                                            New York, NY 10016
                                            (212) 210-9471
                                            steve.penaro@alston.com

                                            *Counsel for The Coca-Cola Company*